# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 1:07CR00008 |
| v. | **OPINION AND ORDER** |
| **CALVIN "SLEAZY" IBERSON**, A/K/A **GEORGE BERNARD WESLEY**, | By: James P. Jones<br>Chief United States District Judge |
| Defendant. | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Calvin Iberson, a federal inmate, filed pro se a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2009).[1] Iberson raised two claims: (1) that his twenty-year statutory mandatory minimum sentence based on his prior state drug convictions was improper and (2) that counsel failed to file a notice of appeal after Iberson asked him to do so. After the government responded to the § 2255 motion, and upon review of the record, I took the government's Motion

---

[1] The defendant contends that his real name is George Bernard Wesley, Jr. Because the Indictment, Plea Agreement, and Judgment all refer to him as Calvin Iberson, however, I will refer to him by that name.

to Dismiss under advisement, appointed counsel for Iberson, and conducted an evidentiary hearing on Iberson's second claim.

This Opinion contains my findings of fact, taking into account the testimony given at the hearing and the record as a whole. Based on the facts found and the legal conclusions flowing therefrom, I conclude that before entering his Plea Agreement, the defendant was denied the effective assistance of counsel in connection with his right to appeal the sentence enhancement issue. For relief, I will grant the defendant an opportunity to appeal without the burdens of his Plea Agreement.

I

Calvin Iberson faced charges of possession with intent to distribute or distribution of fifty grams or more of cocaine base, in violation of 21 U.S.C.A. § 841(a)(1) and 841(b)(1)(A) (West 1999 & Supp. 2009) (Count One) and possession of a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C.A. § 922(g) (West 2000) (Count Two). The government filed an Information pursuant to 21 U.S.C.A. § 851 (West 1999) seeking enhanced punishment on the drug count based on Iberson's prior felony drug convictions. The requested enhancement increased the applicable statutory mandatory minimum

sentence from ten years to twenty years of imprisonment. *See* 21 U.S.C.A. § 841(b)(1)(A).

Iberson's retained counsel filed an objection to the enhancement, arguing that Iberson was not eligible for the enhanced punishment, because his prior state convictions were not for a "felony drug offense" within the meaning of 21 U.S.C.A. § 802(44) (West Supp. 2009). Under this section, to be eligible for an enhanced sentence, the defendant must have been convicted of "an offense that is punishable by imprisonment for more than one year under any [federal or state law] that prohibits or restricts conduct relating to narcotic drugs." *Id*.

Iberson conceded that he was previously convicted in Guilford County, North Carolina, of separate counts of possession of cocaine and heroin, in violation of North Carolina law. N.C. Gen. Stat. § 90-95(a)(3), (d)(2) (2005). The state court sentenced him to a consolidated term of six to eight months imprisonment on both counts. The prison term was suspended, and Iberson was placed on supervised probation for thirty-six months. These offenses are called Class I felonies under North Carolina law. Iberson argued, however, that he was not eligible for a sentence of more than eight months under North Carolina law, because he had no prior record and his offenses fell within the "presumptive" range of disposition. *See* N.C. Gen Stat. 15A-1340.17(c) (2005).

I denied Iberson's objection. *United States v. Iberson*, No. 1:07CR00008, 2007 WL 1472064 (W.D. Va. May 21, 2007). In so doing, I relied on decisions of the United States Court of Appeals for the Fourth Circuit, indicating that I should follow a generic rather than an individualized approach in determining the possible punishment for the state offenses. *See, e.g., United States v. Harp*, 406 F.3d 242, 246 (4th Cir. 2005). Under the North Carolina sentencing scheme, it is possible for a defendant convicted of a Class I felony to be sentenced to up to fifteen months imprisonment. *See* N.C. Gen. Stat. § 15A-1340.17(d) (2005). I relied on the reasoning in *Harp*, that "if *any* defendant charged with that crime could receive a sentence of more than one year," then the offense is punishable by imprisonment for more than one year. *Harp*, 406 F.3d at 246 (citing *United States v. Jones*, 195 F.3d 205, 206-07 (4th Cir. 1999)). Although the *Harp* and *Jones* decisions did not construe § 802(44), I found these cases to be persuasive because they interpreted similar language in other sentencing contexts. In addition, there was a nonprecedential Fourth Circuit opinion on point. *See United States v. Curry*, 213 F. App'x 181, 181 (4th Cir. 2007) (unpublished) (holding that *Harp* foreclosed any claim that North Carolina conviction for felony possession of cocaine did not qualify as a felony drug offense for purposes of applying the enhanced penalty under § 841(b)).

Thereafter, with Iberson facing a mandatory minimum sentence of twenty years on Count One, his attorney met with his client to discuss his options. The evidence of guilt was overwhelming as to both counts. The attorney and Iberson discussed a possible appeal of the sentencing enhancement issue, but the attorney advised Iberson that even though the cases cited in my opinion involved other statutes, he believed that the chances of a Fourth Circuit reversal of my ruling were "not very great."[2] Other than an appeal of the enhancement, he advised Iberson that his only other chance to reduce the length of his sentence was to offer substantial assistance to the government in hopes of achieving a motion for reduction below the statutory mandatory minimum. Iberson professed to be able to provide the government with information that could help authorities investigate and prosecute others.

The government then offered Iberson a written Plea Agreement, whereby he would plead guilty to the drug count, Count One, in exchange for dismissal of Count Two and the government's recommendation that he receive full credit for acceptance of responsibility. The Plea Agreement included Iberson's recognition that there was a mandatory minimum sentence of twenty years, as well as his waiver of the right to appeal of the right to collaterally attack the judgment or sentence. The attorney

---

[2] Iberson recalled his attorney saying, "[I]f we go to higher court, they're going to say the same thing that Judge Jones did."

testified that he and Iberson discussed trying to "work the case out," going to trial, or pleading "straight up," meaning without a plea agreement, but that he did not recall being offered by the government the chance to make a proffer outside the government's proposed plea agreement and that all discussions of substantial assistance in Iberson's case included the plea agreement option. Iberson testified that the attorney never advised him of the possibility of pleading guilty without a plea agreement in order to preserve his right to appeal the sentence enhancement issue. There is no dispute but that the government does not insist that a defendant enter into plea agreement as a prerequisite for making a proffer or receiving a substantial assistance motion. While there is a conflict in the evidence, there is no question but that the attorney did not advise Iberson that he could choose to plead guilty to both counts without a plea agreement and thereby obtain an opportunity to give substantial assistance in the hope of a government motion, and if that failed, retain his right to appeal the application of the sentencing enhancement.

Iberson executed the Plea Agreement, and I accepted his plea after conducting the standard colloquy. During the Rule 11 plea colloquy, Iberson indicated that he was twenty-four years old, that he had gone as far as ninth grade in school, that he could read and write, that he had been in special education classes as a young child, but had never been hospitalized for any mental or emotional condition. He stated that

he had never been treated for abuse of alcohol or drugs and was not under the influence of alcohol or drugs. He agreed that he had discussed the charges and the Plea Agreement with counsel and that he initialed each page and signed the agreement to indicate that he had read it. He indicated that he was fully satisfied with counsel's representation and that he understood the terms of the Plea Agreement as summarized by the prosecutor.

    I questioned him specifically about the fact that the Plea Agreement included a waiver of his right to appeal and his right to collaterally attack his sentence, and he indicated that he understood these waivers. Iberson denied that anyone had made any promises to him or otherwise caused or coerced him to plead guilty. He indicated that he understood the consequences of his guilty plea, the rights he was waiving, the elements of the charges that the government would have to prove at trial, and the manner in which his sentence would be calculated, including the twenty-year mandatory minimum sentence to which he would be subject based on his prior criminal record. He agreed that he was pleading guilty because he was, in fact, guilty of the charge. After the prosecutor reviewed the evidence that the government was prepared to present at trial, Iberson indicated that he did not dispute that evidence. I found that Iberson was fully competent and capable of entering a plea and that his plea of guilty was knowing and voluntary. I then accepted his plea.

I conducted a sentencing hearing on August 23, 2007, and sentenced Iberson to 240 months of imprisonment, the statutory mandatory minimum sentence. After that hearing, counsel did not talk to Iberson about the possibility of appealing, and no notice of appeal was filed. After sentencing, Iberson did not ask counsel to file a notice of appeal.[3]

II

"[A]n attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a notice of appeal even though the defendant may have waived his right to appeal." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007). I find that after the sentence was imposed, Iberson did not ask his attorney to file a notice of appeal. Therefore, to the

---

[3] Iberson claimed in his initial § 2255 motion that counsel denied him the right to appeal by failing to perfect an appeal on his behalf. In later written submissions, he alleged that immediately after sentencing, he told counsel that he wished to appeal his sentence enhancement and that counsel never informed him that no appeal had been filed, but that he did not learn of this fact until after he arrived at federal prison and placed a telephone call to counsel's office. At the hearing, however, Iberson testified that after sentencing, he first talked to counsel about an appeal when he called counsel's office from federal prison two or three months after the judgment. The attorney testified that the only time he and Iberson discussed an appeal was before Iberson signed the Plea Agreement and that Iberson never asked him to appeal the sentence after sentencing. I accept the attorney's testimony in this regard.

extent that Iberson has alleged that counsel was per se ineffective for failing to file a notice of appeal, his claim is without merit and must be dismissed.

In his written submissions and at the hearing, however, Iberson argued more generally that counsel's actions deprived him of the right to appeal. As the Fourth Circuit has held:

> In order to establish a Sixth Amendment violation based on counsel's failure to appeal, [the defendant] must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed. . . . When a client does not specifically instruct counsel to appeal . . . , whether counsel has been ineffective by failing to appeal depends upon whether counsel in fact consulted with the defendant about an appeal. In this context, "consult" conveys a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has not consulted with his client, the court must then ask whether the failure to consult itself constitutes deficient performance. The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) (internal quotation marks and citations omitted). On the other hand, the Supreme Court in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), recognized that in rare cases, counsel would have no constitutional duty to consult concerning an appeal:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable."

*Id.* at 479 (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). To satisfy these constitutional principles, counsel's choices regarding consultation must be reasonable under the circumstances. *Id.* at 481.

A defendant who demonstrates that counsel had a constitutional duty to consult with him about an appeal, but failed to fulfill that duty, must also demonstrate prejudice—a reasonable probability that, but for counsel's deficient conduct, the defendant would have appealed. *Id.* at 484. The essential nature of such a claim is that counsel's deficient performance caused the defendant to forfeit an appeal that he otherwise would have taken. *Id.* If a defendant demonstrates the presence of nonfrivolous grounds for appeal, the two parts of the inquiry—duty to consult and prejudice—may both be satisfied. *Id.* at 486.

Iberson's counsel did not consult with his client about an appeal immediately after sentencing or at any time within the appeal period. Relying on discussions that counsel had with Iberson before entry of the guilty plea, counsel reasonably believed

that Iberson did not want to appeal the sentence as imposed. During these prior meetings, Iberson had chosen to plead guilty and waive his right to appeal, in order to seek a motion for reduction of the twenty-year sentence he expected to receive. I agree that under these circumstances, counsel was not deficient in failing to file a notice of appeal.

Iberson argues, however, that counsel's discussions during plea negotiations about his right to appeal did not satisfy the consultation requirement under *Flores-Ortega*. Specifically, he argues that counsel did not explain the true advantages and disadvantages of appealing the sentence enhancement and that this failure to consult deprived him of an appeal that he otherwise would have taken. I find merit in these arguments.[4]

Counsel's consultation about the appeal option was deficient in several ways. First, counsel's primary emphasis in discussions with Iberson was counsel's assessment that an appeal of my decision to deny the sentence enhancement objection would not likely succeed. Advice regarding an appeal's chances for success is not the equivalent of discussing the advantages and disadvantages of appeal, in accord

---

[4] To the extent that Iberson's counsel raised a new claim during the evidentiary hearing, regarding the alleged inadequacy of counsel's consultation concerning Iberson's appeal rights at the time of the guilty plea, I find that such a claim relates back to Iberson's claim in his initial § 2255 motion that counsel denied him the right to appeal. *See* Fed. R. Civ. P. 15(c)(1)(B).

with the duty to consult as defined in *Flores-Ortega*. *Id.* at 478. The published Fourth Circuit case law I cited in denying the objection to the sentence enhancement was not directly on point. Clearly, Iberson had nonfrivolous grounds for appeal of the sentence enhancement and before entering the guilty plea, expressed to counsel his desire to appeal.[5]

Second, counsel failed to advise Iberson fully of the advantages of pleading guilty "straight up" to both counts in order to preserve the right to appeal. This option did not subject Iberson to a likelihood of more prison time, allowed him to appeal the sentence enhancement, and left open the possibility of seeking a sentence reduction based on substantial assistance. The evidence before the court indicates that a written Plea Agreement is not a prerequisite to offering one's cooperation in exchange for a possible motion and that the government's willingness to negotiate such a motion depends on the circumstances of each case. Yet, counsel did not consider the possibility of Iberson pleading guilty without an agreement and then also giving a proffer in hopes of a motion. Instead, counsel presented the Plea Agreement

---

[5] Iberson's case is not the equivalent of the *Flores-Ortega* example of the defendant who pleaded guilty in order to receive a specific sentence with which he was satisfied, thus failing to trigger counsel's duty to consult regarding appeal. *See id.* at 479. Iberson's understandable dissatisfaction at facing a twenty-year sentence, the nonfrivolous grounds for appeal, and Iberson's stated desire to appeal clearly invoked counsel's duty to consult with him regarding his appeal rights. While counsel could theoretically have fulfilled this duty before entry of the guilty plea, Iberson argues that counsel failed to do so, and I agree.

option to Iberson as his only chance to pursue a reduction, thus giving him a false choice between appealing the sentence enhancement and seeking a reduction for substantial assistance.

Third, counsel did not fully explore with Iberson the minimal benefit the Plea Agreement provided. Dismissal of Count Two saved Iberson a second conviction and the $100 special assessment he would have been charged for that count, but did not reduce his sentence exposure in the least.[6] Similarly, the reduction for acceptance of responsibility was swallowed up by the twenty-year mandatory minimum and provided Iberson no real benefit for sentencing purposes. Moreover, the Plea Agreement waived appeal and collateral attack rights. Without further investigation, counsel's strategic choice to characterize the Plea Agreement as an opportunity for seeking a motion for a downward departure was not a reasonable one.

For the stated reasons, I find that counsel did not consult with Iberson about his right to appeal in the manner required under the Sixth Amendment. *See id.* at 478. Specifically, I find that counsel did not provide Iberson with valid information about the advantages and disadvantages of pursuing an appeal. *See id.*

---

[6] The maximum sentence for Court One was life imprisonment, so any additional conviction would not have increased the maximum term of imprisonment available. If Iberson had been convicted of Count Two, his Total Offense Level would have increased by two levels, but his imprisonment range would still have been 240 months and his fine range would have remained the same. *See* U.S. Sentencing Guidelines Manual §§ 5G1.1(b), 5E1.2(c)(3) (2009).

Where counsel did not consult regarding the right to appeal, the defendant must also prove prejudice by demonstrating a reasonable probability that, but for counsel's deficient conduct, the defendant would have appealed. *Id.* at 484. In this case, Iberson satisfies the prejudice prong in two ways. First, he communicated to counsel his dissatisfaction with the enhancement ruling and his desire to appeal that ruling. Yet, without exploring other options, counsel pursued plea negotiations that included a waiver of the very right that Iberson sought to invoke. Second, Iberson's testimony indicates a reasonable probability that if counsel had fully explained the advantages and disadvantages of pursuing an appeal rather than accepting the Plea Agreement, Iberson would have chosen to plead guilty to both counts and would have pursued an appeal. Therefore, I find that Iberson was prejudiced by counsel's failure to consult with him about his right to appeal as required under the *Flores-Ortega* standard and that Iberson is entitled to relief under § 2255.

III

I am aware that under the Plea Agreement Iberson accepted, Iberson waived not only his right to appeal, but also his right to collaterally attack the judgment by bringing this action. It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is

knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is knowing and intelligent depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22. Claims of ineffective assistance of counsel regarding entry of the waiver itself, however, cannot be waived and must be considered part of the court's inquiry into the validity of the guilty plea and the plea agreement waiver of § 2255 rights. *See, e.g.*, *id*; *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (citing the holdings of other courts and ruling that "[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement [waiving § 2255 rights] cannot be barred by the agreement itself—the very product of the alleged ineffectiveness.").

Under these principles, I find that counsel's inadequate consultation with Iberson during plea negotiations concerning his right to appeal constitutes an extraordinary circumstance that undermines the reliability of certain sworn statements

Iberson made during the plea hearing. Specifically, I find that he is no longer bound by his statements concerning his understanding of the Plea Agreement provision stipulating to his prior drug felony conviction and the provisions waiving his rights to appeal and to bring this § 2255 action, because this "understanding" was based on ineffective assistance. *See Jones*, 167 F.3d at 1145. As such, Iberson's guilty plea, pursuant to the Plea Agreement, was not knowing and, therefore, the Plea Agreement waivers of appeal rights and collateral attack rights are invalid.

With Iberson's waiver no longer in effect to bar review of any of his claims under § 2255, I must address each claim on the merits. His first claim, alleging that his sentence was erroneously enhanced, I have already decided. I remain convinced that the enhancement is appropriate, for the reasons stated in my Opinion entered May 21, 2007. Therefore, I will deny relief on Claim (1) of Iberson's § 2255 motion.

For the reasons stated, I will grant relief on Claim (2) to the extent that it alleges that counsel was ineffective in failing to consult with Iberson concerning an appeal.[7]

---

[7] I have analyzed this claim under *Flores-Ortega*, as it governs claims regarding denial of appeal rights. However, I would reach the same conclusion under *Strickland*, 466 U.S. at 685-95 and *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (finding that to prove ineffective assistance bearing on validity of guilty plea, defendant must demonstrate that but for counsel's deficient performance, "the outcome of the plea process" would have been different).

IV

Upon determining that defendant is entitled to relief, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C.A. § 2255(b). This "language confers a broad and flexible power to the district courts to fashion an appropriate remedy." *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997) (internal quotation marks omitted).

I find that the appropriate relief for Iberson is to allow him the opportunity to pursue the appeal of which he was deprived by counsel's ineffective assistance. Therefore, I will reenter the Judgment so that he may exercise his right to appeal the denial of his Objection to Use of Prior Conviction.

V

In accordance with the foregoing, it is **ORDERED** as follows:

1. The defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 is DENIED as to Claim (1) and GRANTED as to Claim (2), to the extent that it alleges that counsel was ineffective in failing to consult with Iberson concerning an appeal.

2. The clerk shall prepare and enter an Amended Judgment, in every respect the same as the previous Judgment except as to date of entry;

3. Upon entry of the Amended Judgment, counsel appointed to represent the defendant in the § 2255 proceedings shall consult with the defendant and, if directed, file a notice of appeal from the Amended Judgment; and

4. The clerk shall close the § 2255 case, nothing further remaining to be done therein.

ENTER: April 14, 2010

/s/ JAMES P. JONES
Chief United States District Judge